UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LESLIE GORDON,

    Plaintiff,

v.                                           Case No: 6:16-cv-383-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## ORDER[1]

Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for a period of disability, disability insurance benefits, and supplemental security income under the Act. Upon a review of the record, and after due consideration, the Commissioner's final decision is **AFFIRMED**.

### Background[2]

Plaintiff filed for benefits on December 16, 2011, alleging an onset date of May 15, 2011 (Tr. 247-261). She claimed disability due to depression, bipolar illness, "stomach problems," and limited mobility of her left arm (Tr. 279). Plaintiff's applications were denied initially and on reconsideration, and she requested and received a hearing before an administrative law judge ("ALJ") (Tr. 34-67, 132-41). In a decision dated July 9, 2014,

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge and the matter has been referred in accordance with 28 U.S.C. §636(c) and Fed. R. Civ. P. 73.

[2] The information in this section is taken from the parties' joint memorandum (Doc. 17).

the ALJ found Plaintiff not disabled through the date of the decision (Tr. 9-31). The Appeals Council denied Plaintiff's request for review on January 11, 2016 (Tr. 1-8). Consequently, the ALJ's July 9, 2014 decision is the final decision of the Commissioner. Having exhausted the available administrative remedies, Plaintiff filed this action for judicial review (Doc. 1). The matter is fully briefed and ripe for resolution.

### The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, the ALJ performed the required five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date (Tr. 15). At step two, the ALJ determined that Plaintiff had the severe impairments of: bipolar disorder; polysubstance abuse; major depression; borderline personality disorder; Crohn's disease; mild degenerative changes of the cervical spine; and chronic left shoulder pain (20 CFR 404.1520(c) and 416.920(c). Id. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments

that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Id. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), as she is able to stand and walk for a combined total of 6 hours, while sitting for 6 hours, each in an 8-hour workday, except that she can lift and carry only 10 pounds occasionally, and 3 to 5 pounds frequently, while needing to be afforded the option to alternate sitting and standing, changing positions at a maximum frequency of 30 minutes. Additionally, she must avoid loud noises, and she is limited to frequent but not continuous reaching utilizing her left shoulder. Further, the claimant is limited to simple, routine and repetitive tasks, involving only simple work decisions, while having no more than occasional interaction with co-workers, supervisors and the public.

(Tr. 16).

At step four, the ALJ determined that Plaintiff was unable to return to her past relevant work (Tr. 23). Then, considering Plaintiff's age, education, work experience, and RFC and relying on the testimony of a vocational expert, the ALJ determined that Plaintiff could perform other jobs that existed in the national economy, such as document specialist and surveillance system monitor (Tr. 24). Therefore, the ALJ found Plaintiff not disabled from May 15, 2011, through the date of the decision (Tr. 24-25).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a

conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

Plaintiff objects to the ALJ's findings with respect to the medical opinion evidence and the formulation of her RFC assessment.

<u>Evaluation of Medical Opinions</u>

Plaintiff contends that the ALJ erred in failing to credit the opinions of Thomas R. Masters, D.O., Plaintiff's treating family practitioner, and Glenn Bailey, Ph.D., consultative examiner. The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel , 631 F.3d at 1178–79 (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2);

Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician *unless there is good cause to do otherwise*. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. Lewis, 125 F.3d at 1440.

By contrast, a consultative examiner's opinion is not entitled to the deference normally given a treating source. See 20 C.F.R. § 404.1527(c)(2); Crawford v. Comm'r, of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004). Nonetheless, all opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. See 20 C.F.R. §§ 404.1527, 416.927, and Winschel.

*Dr. Masters*

Throughout his opinion, the ALJ summarized Plaintiff's pertinent treatment with Dr. Masters and ultimately weighed his opinions, as follows:

> On March 8, 2012, Dr, Masters completed a functional assessment regarding the claimant's physical capabilities, opining that the claimant could lift up to 100 pounds

occasionally, and 10 pounds frequently. Dr. Masters indicated no other physical functional limitations whatsoever (Exhibit B-9F, pp. 1-2). Dr. Masters is the claimant's treating source, and his opinions regarding the claimant's physical functional capabilities are well-supported by medically acceptable clinical and laboratory diagnostic techniques. As Dr. Masters' opinions are consistent with other substantial evidence in the record, I give significant weight to his opinions regarding the claimant's physical capabilities (SSR 96-2p).

\*\*\*

With respect to the objective medical evidence of record regarding the claimant's mental health impairments, I first note that, in addition to specialist treatment, the claimant has occasionally been treated for depression with, or noted to have depression by, Dr. Masters, her primary care physician. On June 14, 2011, she reported depression to Dr. Masters, leading to an assessment of major depressive disorder, single episode, moderate. Dr. Masters' psychiatric examination at that time showed good judgment, normal mood and affect, with the claimant oriented, active and alert. Her recent and remote memories were normal (Exhibit B-9F, pp. 5-6). In April 2013, Dr. Masters noted the claimant's depression again, still indicating it was "single episode, moderate" (Exhibit B-19F, p. 1), and his psychiatric examination of the claimant on November 8, 2013, again showed good judgment, normal mood and affect, with the claimant oriented, active and alert, and her recent and remote memories normal (Exhibit B-24F, p. 2).

On March 18, 2012, when he completed his physical functional assessment for the claimant, Dr. Masters also completed an assessment of the claimant's mental functional capabilities. Specifically, Dr. Masters opined that the claimant had mostly moderate functional limitations in all areas of her mental functioning, except that she had marked limitation regarding the ability to understand, remember and carry out detailed instructions and the ability to make judgments on simple work-related decisions (Exhibit B-9F, p. 3). Applying SSR 96-2p, I, nonetheless, give little weight to Dr. Masters' mental functioning assessments. Dr. Masters is the claimant's primary care physician, and he is not a specialist with regard to mental illness. Further, his assessments are contradicted by his own psychiatric examinations and treatment records, which characterize the claimant's depression as moderate, and consistently indicate normal mood, affect and memory, with good judgment (Exhibits B-9F, pp. 5-6; and B-24F, p. 2).

- 6 -

> Dr. Master's opinion that claimant cannot make judgments on simple work-related decisions is very extreme. It is contradicted by his opinion that claimant is capable of managing her benefits in her own best interest.

(Tr. 18, 20).

Plaintiff contends that the ALJ did not properly consider Dr. Masters' opinion in that the ALJ did not acknowledge Dr. Masters as a treating source; only "minimally articulated" the ALJ's reasons for finding inconsistency with the treatment records; and considered the opinion evidence "in isolation" from the similar opinion of Dr. Bailey. The Court cannot agree.

The ALJ explicitly recognized that Dr. Masters was a treating primary care source (Tr. 18, 20), and correctly observed that Dr. Masters was not a mental health specialist.[3] There is also no merit to the contention that the records were considered by the ALJ in isolation. The ALJ detailed all of the treatment records and opinions and made numerous findings based on "the cumulative" treatment records and "cumulative" credible evidence. See, *e.g,* Tr. 21-23. Lastly, the reasons articulated by the ALJ for discounting the opinion are adequately stated, and those reasons are supported by the substantial evidence the ALJ cites. As the ALJ complied with the legal standard and his conclusions are adequately supported, no error is shown.

*Dr. Bailey*

The ALJ discussed the examination and opinions of this examiner as follows:

> On May 10, 2012, the claimant underwent a consultative psychological examination performed by Glenn Bailey, Ph.D., reporting mood swings, while also telling Dr. Bailey that she had drunk alcohol the prior week, while using crack cocaine a couple weeks prior, and using marijuana and "various pills" a couple months previously. Dr. Bailey's examination showed

---

[3] The regulations specifically permit the ALJ to consider specialization in evaluating opinions of record. 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

- 7 -

>the claimant to be oriented, with attention, concentration and memory all deemed normal. No problems with productivity of thought were noted, and the claimant's thoughts were goal directed and relevant. Although the claimant indicated that about 4 months back she had seen "like a black shadow," saying she had those experiences for the past seven years, she reported no auditory or visual hallucinations to Dr. Bailey at the time of the examination. No delusional systems were noted. Dr. Bailey diagnosed the claimant with alcohol, cannabis, cocaine and polysubstance abuse, in remission, as well as major depression, bipolar disorder, possibly with psychotic features, and borderline personality disorder. I give little weight to Dr. Bailey's assessment of a GAF of 50, and that the claimant has marked limitation in any areas of functioning, as these findings are inconsistent with Dr. Bailey's own examination of the claimant. Specifically, Dr. Bailey's examination findings, as outlined above, do not support his findings that the claimant has marked limitation with respect to responding appropriately to work pressures in a usual work setting and changes in a routine work setting (Exhibit B-1 OF). The treatment notes of Stairways summarized in detail above contradict these findings because the mental status exams are mostly normal. Dr. Bailey did not document any difficulty of the claimant interacting with him in the stressful situation of a psychological exam for Social Security Benefits. This contradicts his finding that claimant has a marked impairment in responding to work pressures and the limitations in the RFC reduce the stress level of employment. As indicated by the cumulative treatment records, when the claimant continues with treatment, her functional limitations are no worse than moderate.

(Tr. 21-22).

Plaintiff contends that the ALJ erred in not crediting Dr. Bailey's opinion since Dr. Bailey is a specialist; the stress of presenting for a medical evaluation is different from the stress associated with full time competitive employment; and rejection of an expert opinion cannot be had on "lay analysis of the raw medical data" (Brief at 19-20). The Court is again unpersuaded.

While Dr. Bailey is indeed a specialist, he is also a one-time examiner and, as the Commissioner notes, a consultative examiner's opinion is not entitled to the deference

- 8 -

normally given a treating source. Crawford, supra. The ALJ acknowledged Dr. Bailey's expertise, but found his conclusions inconsistent with his own examination findings, as well as those of other examiners and providers. This rationale is supported by the evidence cited.

With respect to the other objections noted, the Court agrees that the stress of a medical evaluation is different (although not necessarily less) than the stress associated with full time competitive employment, but finds the distinction harmless here. The ALJ's comment is an observation that Plaintiff did not have any difficulty interacting in a stressful situation, and includes a recognition that, in any event, "the limitations in the RFC reduce the stress level of employment." (Tr. 22). As for the lay analysis argument, Plaintiff appears to contend that rejection of the opinion evidence means the ALJ had no "legitimate medical basis" for his decision. See Doc. 17 at 19. This is an incorrect assumption. The ALJ, and not a medical source, determines the RFC. Robinson v. Astrue, 365 F. App'x 993, 999 (11th Cir. 2010) ("[T]he task of determining a claimant's [RFC] ... is within the province of the ALJ, not of doctors."). Moreover, "a medical source statement is not essential to an RFC determination. The ALJ is under no obligation to obtain or adopt a medical source statement's findings as her RFC finding." Smith v. Comm'r, Soc. Sec. Admin., No. 2:15-CV-00964-HGD, 2017 WL 167322, at *6 (N.D. Ala. Jan. 17, 2017).

As for the contention that the ALJ should have ordered another consultative examination, the ALJ "has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir.2007). There is no showing that the record was

- 9 -

insufficient. As the ALJ adequately discussed the entire medical record, articulated a rationale for weighing the medical opinions, and the rationale is supported by substantial evidence, the objections are overruled.

### The RFC finding

The ALJ found, in connection with his assessment of Plaintiff's mental limitations, that she experienced mild limitations of daily activities, moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence and/or pace as a result of her mental impairments (Tr. 16). Plaintiff argues that the ALJ's RFC finding does not address these concentration, persistence, and pace deficits and "the lack of any acknowledgment by the ALJ in the decision as to the conflict between his own findings as to Plaintiff's concentration, persistence and/or pace limitation and his RFC finding deprives this court of a meaningful basis upon which to conduct judicial review, requiring remand." (Doc. 17 at 26).

Plaintiff's contention that the ALJ did not address or acknowledge these findings in formulating the RFC is incorrect. In the RFC, the ALJ limited Plaintiff to no more than simple, routine, repetitive tasks, involving only simple work decisions, while having no more than occasional interaction with co-workers, supervisors, and the public (Tr. 16). The ALJ *explicitly* noted that the RFC "reflects the degree of limitation" he found in performing the mental function analysis (Tr. 16) and the ALJ found that "the limitation to simple, routine and repetitive work in the RFC accommodates any mental limitation" (Tr. 15). This finding is supported by the ample evidence detailed in the decision.

To the extent Plaintiff is inferring that the ALJ's hypothetical question to the vocational expert was flawed in that it failed to explicitly provide for her moderate limitations in concentration, persistence, or pace and social functioning, this is similarly

unpersuasive. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). The Eleventh Circuit has held that an ALJ's hypothetical question must take into account the ALJ's step two finding that a claimant has moderate limitations in maintaining concentration, persistence, and pace, unless the ALJ indicates that the medical evidence suggests that the claimant's ability to work is unaffected by the limitation or the ALJ's question implicitly accounts for the limitation. See Winschel, supra, 631 F.3d at 1180-81.

Since Winschel, the Eleventh Circuit has repeatedly recognized that a hypothetical question could sufficiently account for a moderate limitation in concentration, persistence or pace by including a restriction to simple or routine tasks, if the medical evidence demonstrates that the claimant has the ability to perform those tasks despite concentration deficiencies. See Jarrett v. Comm'r, Soc. Sec. Admin., 422 F. App'x 869, 872 (11th Cir. 2011); Syed v. Comm'r, Soc. Sec. Admin., 441 F. App'x 632, 635 (11th Cir. 2011); Washington v. Comm'r, Soc. Sec. Admin., 503 F. App'x 881, 883 (11th Cir. 2013); Scott v. Comm'r, Soc. Sec. Admin., 495 F. App'x 27 (11th Cir. 2012); Jacobs v. Comm'r, Soc. Sec. Admin., 520 F. App'x 948, 951 (11th Cir. 2013) ("the ALJ found that the evidence demonstrated that Jacobs retained a limited ability to work despite his depression and associated moderate difficulties in maintaining his concentration, persistence, or pace, and substantial evidence supports this finding. The ALJ's hypothetical questions to the vocational expert fully accounted for Jacobs's moderate difficulties in maintaining his concentration, persistence, or pace by limiting him to one to three step non-complex tasks, consistent with the RFC assessment."); Timmons v. Comm'r, Soc. Sec. Admin., 522 F. App'x 897, 907 (11th Cir. 2013) ("An ALJ's

hypothetical question restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence, and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite limitations in concentration, persistence, and pace."); Hurst v. Comm'r, Soc. Sec. Admin., 522 F. App'x 522, 525 (11th Cir. 2013) ("Finally, because the medical evidence showed that Hurst was capable of completing simple tasks and the ALJ's hypothetical to the VE specified that the individual was capable of simple, routine, repetitive tasks, the hypothetical "sufficiently accounts" for Hurst's moderate limitation in maintaining concentration, persistence, and pace."); Lee v. Comm'r, Soc. Sec. Admin., 551 F. App'x 539, 540-41 (11th Cir. 2014) (ALJ's limitation to simple work accounted for claimant's mental limitations).

Here, as noted above, the medical and other evidence referenced and credited by the ALJ demonstrates that, even with some difficulties in concentration, persistence and pace, Plaintiff is able to perform work within the RFC assessment.[4] Therefore, the ALJ's

---

[4] After review of the medical evidence, the ALJ concluded:

> "Overall, the cumulative treatment records reflect no mental health hospitalizations except when the claimant is abusing substances, and the claimant's mental status examinations are relatively normal when she is pursuing prescribed treatments. Every diagnosis in the mental health treatment records is a combination of severe impairments, and the mental problems that the claimant suffers from are attributable, at least in part, to her substance abuse over most of the period in question. Even when considering the claimant's substance disorders, the record does not establish at least 12 consecutive months of debilitating mental health symptoms, as there are several gaps in the treatment records, including no further treatment by the claimant at Stairways since February 2014. Thus, the above-detailed residual functional capacity assessment adequately accommodates the claimant for all functional limitations reasonably related to her medically determinable impairments. No further limitations are warranted by the cumulative credible evidence of record."

(Tr. 23).

inclusion of a limitation to "simple, routine and repetitive tasks that are not fast paced, only simple work decisions" in his hypothetical question to the Vocational Expert[5] fully accounted for the limitations in concentration, persistence and pace, and is consistent with Winschel. Proper legal standards were applied.

## Conclusion

Upon consideration of the foregoing the Commissioner's final decision in this case is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on January 23, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record

---

[5] Tr. 57.